Next is 22-4046 Robertson v. IHC Health Services. And you may proceed. Thank you, Your Honors. May it please the Court. Sheba Roberts on behalf of plaintiffs and appellants. Plaintiffs appeal from the trial court's final judgment granting defendant's motion for summary judgment. The trial court erred because the summary judgment record reflects that there were genuine issues and material facts regarding when plaintiffs discovered their legal injury. Accordingly, the trial court should have denied defendant's motion for summary judgment and reserved that issue to be resolved by the jury. Further, the trial court erred in its interpretation and application of the Utah Health Care Malpractice Act's statute of limitations and statute of proposed provisions as those provisions square with the pre-litigation review requirements that were in effect at the time that plaintiffs were injured and remained in effect until 2019, when the Utah Supreme Court in Vega determined that certain requirements under the pre-litigation review provisions were unconstitutional. Counsel, if your client didn't become aware of their legal injury in March of 2015, what is the right date? Your Honor, appellants and plaintiffs submitted affidavits to the trial court indicating that they discovered their legal injury on August 18, 2016, which is the date... So the concern that I have there that I hope you can help me with is that's the date that the notice, that they filed a notice to commence an action and a request for pre-litigation review, right? That was the actual filing date. So you would expect that there would be some sort of investigation and discussion with counsel and so forth. So I just don't understand how that could be the date. So under Utah law, when counsel files an action, then that date of discovery is imputed to plaintiffs for statute of limitations purposes. So that's one basis under Utah law for concluding that that's the date of discovery for plaintiffs. In addition, I think that the Arnold v. White case is clear that investigation alone is not sufficient to trigger the statute of limitations. So the mere fact that the plaintiffs may have been investigating whether or not they had a claim, even meeting with an attorney to consider whether or not they might file a claim under Utah law to trigger the statute of limitations. Isn't it sufficient that they knew or should have known that they had a claim? I'm sorry? Isn't the standard whether he knew or should have known that he had a malpractice claim? Yes, Your Honor, that is the standard. But the Utah Supreme Court in Arnold v. White in construing that standard stated very clearly that mere suspicion of a medical malpractice claim or investigation into whether a plaintiff might have a medical malpractice claim is not sufficient under that standard. If we reject your position that August 18, 2016 is the trigger date, and frankly, I don't see how we can accept that given the fact that your clients were consulting with counsel and at some point prior to that date had a reasonable expectation that they had a legitimate claim. If you haven't given us an alternative trigger date, what are we to do with that? Or do we have to then accept the district court's conclusion that it was March of 2015? No, Your Honor. I think that it's clear under Utah law that the defendants bear the burden of establishing when the statute of limitations began to run on their affirmative defense. And it's also clear from the summary judgment record that the other two dates that the defendants put forth are at best ambiguous and raise genuine issues of material fact as to whether or not the statute of limitations was triggered and whether plaintiffs had a sufficient notice of their claims. So as to the first date the defendants put forward on March 9, 2015, I think it's important to note the facts and circumstances of the conversation at issue with Dr. Belknap on that date. And I think it's important for the court to note that Mr. Robertson had recently been admitted to Salt Lake Regional Medical Center on that date and upon admission, his G-tube was inadvertently pulled out, which prompted a CT scan. And defendants argue that in the investigation in order to obtain approval for Dr. Belknap to proceed with an emergency surgery, that Mr. Robertson and Mrs. Robertson were sufficiently notified of their legal injury. Counsel, do your claims about or your arguments about incapacity relate to that date as well? Yes, Your Honor. As the trial court noted, there were sufficient problems with Mr. Robertson's ability to understand that he had a legal right at that time. He was in very critical condition. His testimony was that he was falling apart and the intake notes when he was admitted into Salt Lake Regional Medical Center note that he had severe critical polyneuropathy, had trouble maintaining, and would not be in a state to understand that he had legal rights at that time. Why is any of that material in light of his testimony, his deposition testimony, which was quite specific about what he recalled from the conversation that he had on March 9, 2015 in this informed consent process? I think it's actually important to note that there were several surgeries that occurred and that were provided by Dr. Belknap. And so the deposition testimony by Mr. Robertson was that at some point Dr. Belknap had informed him that the wrong surgery had occurred and that instead of removing the entire pancreas, only a portion of the pancreas had been removed. But in the context of Mr. Robertson's hospitalization, the fact that he had multiple surgeries, it's not clear from the summary judgment record when that discussion actually occurred. It's also unclear in terms of whether that discussion sufficiently apprised Mr. Robertson of negligence on the part of defendants in terms of his prior care. Why not? In part because of the extended hospitalization that Mr. Robertson had. So Dr. Cook actually performed multiple surgeries. So for Dr. Belknap to say the wrong surgery was performed is not clear as to which surgery Dr. Belknap may have been referring to. Is there any question though that Mr. Robertson understood from that conversation that what surgery it was and what he was talking about? Based on Mr. Robertson's own deposition testimony, he certainly didn't seem to struggle with any understanding of what that conversation was about or indicate he had any questions. And he had an opportunity to, you could cross-examine him in his deposition. He could make changes to his deposition if it was incorrect. What, you know, instead we get an affidavit that's filed later, but I don't understand why that deposition isn't pretty solid. Well, I would suggest that his testimony is actually fairly ambiguous in terms of his extended hospitalization and also in light of the fact that he was testifying at his deposition years after his hospitalization and years after the informed consent conversation. As you often do, it's about your recollection from years previously. And if you have trouble recollecting, you say so. And I believe that he did state in his deposition testimony that he did not remember much of that informed consent conversation because he was, quote, falling apart and was barely functioning at that time, which is corroborated by the medical records, which demonstrate that he was in severe critical condition, which is why he required that emergency surgery. In addition, Mrs. Robertson's deposition testimony does not unambiguously assert that plaintiffs were adequately apprised of their legal injury during that informed consent conversation on March 9, 2015. Mrs. Robertson is a native Thai speaker, and there's no indication in the record that there was an interpreter present during that informed conversation with Dr. Belknap. And her deposition transcript demonstrates that her main takeaway from that was that she did not remember much about the emergency surgery that Dr. Belknap wanted to perform. In her deposition, did she testify that the language barrier contributed to how she understood the events on March that night? No, I don't believe that that was an issue that came up in her deposition. However, I think that even the trial court noted that her testimony at best on the March 9, 2015 date was ambiguous. I think ambiguous was the exact term that the trial court used. And yet, after determining that her testimony was ambiguous, the trial court proceeded to use her testimony to support its conclusion that plaintiff's statute of limitations began to occur. There were also similar problems with the testimony from Stephen Clark. Stephen Clark's testimony was ambiguous in terms of determining when he had conversations with Mr. Robertson regarding a failure of his original doctor not to follow the standard operating procedure, or the fact that he was looking to file a legal action. Mr. Clark testified he did not recall when those conversations actually occurred, and there is no evidence in the summary judgment record to conclusively determine that those conversations took place by the end of December 2015. And given that ambiguity, it was error for the trial court to grant defendants motion for summary judgment. Do we know from the record when Mr. Robertson left the hospital? No, it's not clear from the summary judgment record because, as I mentioned, he had multiple surgeries following the March 9, 2015 initial surgery with Dr. Belknap. And in addition to that, he was in inpatient rehabilitation for an extended course of time. So it's not clear from the summary judgment record when he was discharged from the hospital, and subsequently when he resumed conversations with Mr. Clark. And if it's all right with your honors, I'd like to reserve my remaining time for rebuttal. All right, thank you, counsel. Are we splitting this three ways? We are, your honor. You may proceed. I'll be taking 10 minutes and reserving the rest for my colleagues. That's better. Good morning, and may it please the court. Summary judgment is appropriate, your honor. Your honor's on the basis that plaintiffs failed to file their complaint prior to the expiration of the appropriate and relevant statute of limitations. As we know, that statute is set forth in the Utah Health Care Malpractice Act and is two years. And that begins running from the date of discovery of the illegal injury. Under Utah law, a patient has discovered her injury only when she has discovered her so-called legal injury. And we know that that encompasses both the fact of the injury itself and that it may have been the result of negligence. But the law also says that mere suspicion isn't enough, right? So how is it that the night that Mr. Robertson is about to have emergency surgery, that he is reasonably supposed to understand that he has a legal injury together with his spouse who may have a language barrier? So how do the circumstances of that night do anything more than confirm mere suspicion? Well, I think that that's, you hit it the nail right on the head. It confirmed a suspicion. It was beyond just a suspicion at that point. They had more than a suspicion. They had, and remember, it's important to remember that the knowledge requirement is from the perspective of a lay person. Actual knowledge is not required. We know that from the Jensen and the Arnold decisions. It's from a reasonable person. So the standard is, is that all that's necessary is that a plaintiff be aware of facts that would lead an ordinary person using reasonable diligence to conclude that a negligence claim may exist. And they had that. Any reasonable person who was told by a medical provider that another medical provider made a mistake that resulted in damage and injury to them and nearly cost them their lives, that's more than suspicion at that point. They have someone who is an expert providing them that opinion. Now, ultimately, whether that opinion was correct or not is another issue, but it doesn't matter because all that matters is what it would have meant to a reasonable person. And any reasonable person would have understood that. And the undisputed evidence here shows that the Robertsons knew all three of the factors that they had to have known in order to satisfy the legal standards set forth in Jensen and Arnold. And those three things are the existence of the injury, its likely cause, and the possibility of negligence. And they knew all those things on that date, March 9th. And now we know that that was the date because that was the date on which the surgery at issue was performed, meaning the surgery where Dr. Belknap resected Mr. Robertson's pancreas. And according to plaintiff's own deposition testimonies, as recognized by your honors already, according to plaintiff's deposition testimonies, the day he performed that surgery on Mr. Robertson, he spoke with them and told them he expressed disgust regarding the prior care. He asked who had performed the prior surgery. He stated that, at least in his opinion, the prior care was deficient, that he received the wrong surgery, and that all of his pancreas should have been removed and not merely 10%, and that even Mr. Robertson would have died had he not received life-saving care immediately from that surgery. Dr. Belknap, was he ever deposed? Dr. Belknap was deposed, your honor. Yes. And was his testimony consistent with what you were just presenting? Yeah, Dr. Belknap's testimony, he testified in a manner that, to our understanding, was at least consistent with that. But again, medical providers are often reticent to throw their colleagues under the bus, so to speak, and for obvious reasons. And yeah, ultimately, Dr. Belknap was not the one who was an expert witness on behalf of plaintiffs in this case. But again, that doesn't matter, because ultimately, it doesn't even matter if Dr. Belknap was right about the fact that negligence occurred. All that matters is whether the Robertsons, as reasonable people, normal, ordinary people, when they heard Dr. Belknap say that, and that that's what they understood, their own testimony on the deposition record. But I think that's the key, is whether they understood it. Well, I think it's clear that they did. They provided that testimony to counsel at their depositions. And the testimony, as your honor's already pointed out, is unambiguous. And in fact, it was two separate conversations. Counsel referred to them as one single conversation. There were two separate conversations, at least according to the Robertsons. Mr. Robertson said that the conversation occurred after the procedure. Mrs. Robertson said it occurred prior. They never said it was the same conversation, but yet their testimony was the same. They corroborate each other. And then furthermore, there's more evidence that they understood, not even just in the future of their depositions, but contemporaneously, because Mr. Robertson conveyed that information to Mr. Clark in a conversation that took place by Mr. Clark's own testimony within three months after Mr. Robertson's discharge from the hospital. Well, there really isn't any ambiguity about when he was discharged. It was on April 7th of 2015. That was his discharge from Salt Lake Regional Medical Center. Where is that in the record? I don't know that it's preserved in the record here, your honor. But from the medical records, we know that fact. Now, ultimately, the reason why multiple dates were presented is because in this case, it really isn't a close case. I mean, I think it's clear from the testimony of the Robertsons and of Mr. Clark that the Robertsons knew of their injury. They knew the mechanism of the injury. They knew the perpetrator of the injury. And they knew that it was probably the result of negligence. And that's all that matters, those three things. That's what Genesis says. To your opposing counsel's contention that the district court didn't rely or it wasn't appropriate for the district court to rely on Mrs. Robertson's deposition testimony because it was ambiguous. I don't think the district court ever said that, personally. I don't think it was ever pointed out by counsel where the district court did say that. But again, even if so, it was one basis among many. Mrs. Robertson's testimony, again, remember, all that matters is her own understanding. And she was testifying in her deposition about her own understanding. And if we just take that on its face, I would submit that it's not ambiguous. And I never recall the district court saying that. Did the district court rely on Mr. Clark? Yeah, the district court did. The district court relied on all three, I believe. In the actual opinion, the court mentioned all three of those things. The conversation that Mr. Robertson had, his deposition testimony, Mrs. Robertson, and then also Mr. Clark. And again, Mr. Clark's significant, not even so much for the timing of when things were, but because it demonstrated that the comprehension that Mr. Robertson had, he was able to convey those things to someone else. And there was no doubt in his mind. In fact, in his own deposition testimony, he was asked, he said, well, did this prompt you? Did Dr. Bonaparte prompt you to perform more investigation? He said, no, I didn't need to. I believed him. He was telling me the truth. His exact words were, he was telling the truth. He didn't doubt it. He believed it. And that's what matters. And it also demonstrates that he had the capacity to understand it at the time. First of all, the capacity argument wasn't really preserved for this court's review. But even setting that aside, plaintiffs have presented no evidence of his actual capacity on the date in question. And it's furthermore, it's belied by the evidence showing that he testified of his own knowledge, what he did remember and his own understanding. So we have that in the record. And furthermore, he was able to convey that to someone else. So plaintiffs have attempted to manufacture a material dispute of fact where none really exists. In the original briefing on the motions for summary judgment, they provided no genuine dispute of material fact and really failed to respond to any of the statements of fact at all. What they did do is submit the declarations that Your Honor's discussed before, and really only one paragraph of each of those declarations even had any effect anyway, which was the section that said that they never learned of their injury until the notice of intent to commence action was filed on August 16th. Well, that clearly constitutes a sham affidavit designed to avoid summary judgment because the assertion that they didn't understand that they had a claim until after they had already began to go down the road of filing it and file a notice of intent is inconsistent not only with their prior testimony, but with common sense. Clearly, they knew at that point and had known long before that. The preparatory work to even get to that point is significant. Documents are being filed. At that point, lots of groundwork had been laid. I think that's clear. Furthermore, waiver. Waiver argument was talked about a lot in the briefing. And a lot of that was on the basis that defendants didn't bring up statute of limitations defense before DOPL and the administrative proceeding pre-application hearings. But DOPL had no authority to decide issues as a matter of law. Its proceedings are informal and non-binding. They're not subject to agency or judicial review. And so bringing the statute of limitations before DOPL would have no effect. It would result in no action. In fact, that's the true holding of the Vega case, which plaintiffs referred to, is that DOPL can't usurp the authority of the judiciary and make determinations as a matter of law about the claim. You're coming up on 10 minutes. Yes, I'll finish up really quickly. Plaintiffs also argued that defendants are equitably stopped from making the limitations defense because we've gone too far down the road of litigation. Really, that all the cases had more to do with arbitration and the intent to arbitrate being waived. And the one case that did bear on the statute of limitations was due to a status as a governmental entity. And status was known all along. Here, the very evidence that we elicited in discovery forms the basis of the motion. Had we come here at the outset of the case before your honors, you would have rejected this motion and rightfully so because we had no evidence. The evidence necessary to establish the high burden in Arnold and in Jensen was elicited during discovery, during the depositions of plaintiffs. And that's the sole basis for our motion. We had to do that. So to say that that constitutes waivers is simply not accurate. And I'll submit the rest of my time to my colleagues. Thank you, your honors. Good morning and may it please the court. I'm Chelsea Phippen here on behalf of Dr. Cook and his professional corporation. I want to bring the court back to the larger picture here that we're talking about. The Utah legislature had the foresight to provide a statement as to their findings and declarations for the Utah Health Care Malpractice Act when they enacted it. And under section 402, they said to provide a reason, the purpose of the act was to provide a reasonable time in which actions may be commenced against health care providers by limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated. And here, the Robertsons had that reasonable time. They had from the time that they discovered their legal injury in March of 2017 or 15, they had almost three and a half years before they commenced their action and the record has ample evidence from the viewpoint of the defendants that they knew about their legal injury. We've talked about the Robertson's own testimony today. We've talked about Mr. Clark's testimony. And I do want to point out that the court asked today if we are not going to accept the August 2018 date, the date that the notice of intent was filed, as the date of knowledge of their legal injury, what's the alternate date? And as you know, the district court determined that the date of discovery of the legal injury was March 9, 2015. Without admitting that that's not the date, because we agree with the district court, I would submit to court that you can take that date into July of 2015 given the testimony from Steve Clark. Mr. Clark testified that within three months of discharge from Salt Lake Regional, which was on April 7, 2015, he was having these conversations with Mr. Robertson that Mr. Robertson believed something had gone wrong with his care and was asking about his complications and what this meant and thinking about seeking legal counsel. With the medical records that support the date of discharge before the district court. In other words, did the district court know the date of discharge when it was considering the proximity and time of Mr. Clark's conversations with Mr. Robertson? Well, I frankly, Your Honor, I am unsure of that where that is in the record, but the three months after discharge was discussed and those three months before this district court was that those conversations took place in 2015. So even if the date of April 7, 2015 was not before the court, surely by December 31, 2015, it was before the court that was in three months of that discharge. So again, that whatever date the court chooses, then the statute of limitations is still expired. So given these facts of the Robertson's own testimony and Mr. Clark, that if the Robertsons are able to pursue their claim, notwithstanding the expiration of the statute of limitations, that goes against the direct findings and declarations of the Utah District Court. Your Honor, do you have something to say? If I could correct something in that record very quickly. I'll give you, I'll give you a minute. Thank you. May it please the Court, Paul Van Komen on behalf of IHCL Services. I just wanted to point out that on page 39 of our brief in footnote 130, we refer to some calculation exhibits that were before the There were two calculation exhibits provided because this is important. One was moving from the date March 9th, and the other one demonstrates that you can do a look back any time before January 15, 2016. A discovery prior to that date would lead to the statute of limitations having run. It shows the periods of time where the clock was stopped, so to speak, turned off while I know it's told, and the times when it would have been running. With regard to the issue on suspicion, I was involved in the five Arnold cases, in the two Jensen cases, and the issue was clarified that it's when the individuals know the facts forming the basis of the cause of action. On page 33 of our brief in footnote 109, the very facts in the complaint include that they failed to perform the needed surgery until March 7, 2015. They had the facts. It was more than a suspicion. Steve Clark also indicated in his testimony, and that's summarized in the brief as well, that Mr. Robertson said he believed, it wasn't just he suspected, he believed that he had a cause of action and he was looking into filing a case. So, thank you counsel. Could you give Ms. Roberts another minute, please? I'd like to touch on a couple of points that were made by defendants. First of all, regarding providing an alternative date, plaintiffs continue to support their position that the date of discovery was on August 18, 2016 when they filed the complaint. But plaintiffs are not required by the summary judgment standards to provide a date certain that would be an alternative date. It's sufficient for plaintiffs to point out that defendants' evidence that they submitted on summary judgment is ambiguous and raises a genuine dispute as a material fact as to when plaintiffs discovered that they had a cause of action for medical The Vega case and the fact that the Utah Supreme Court found that the hurdles that plaintiffs had been jumping through for several years and which prevented them from filing an action sooner, the Utah Supreme Court has now held are unconstitutional. I think that before the trial court, the plaintiffs were entitled to the inference that but for those now unconstitutional requirements, plaintiffs would have immediately filed suit on their claims and there would be no question as to the statute of limitations issue. Didn't you tell the trial court that you weren't seeking, specifically said you weren't seeking retroactive application of Vega? No, Your Honor, I don't believe that that is what we argued before the trial court. I thought the trial court, I thought I saw in the letter where the trial court asked you whether you were seeking retroactive application of Vega and the responses. That may not have been personal, but the responses, no. Sorry, I don't believe that that's what we had argued before the trial court. I also believe that we, before the trial court, had stated that even if the court found that the statute of limitations began to run on the March 9th, 2015 date, that plaintiffs had timely filed under the statute of ultimate repose, which was four years. And in the Jensen case, clearly outlines that that was construed as a statute of limitations for purposes of timely filing suit under the pre-litigation requirements. I'm looking at the summary judgment motion hearing for counsel. The plaintiffs told the district court that they weren't arguing for the retroactive application. The court asked, well, I think that's when you're, I think that's what you're asking me to do is make the Vega retroactive. And the Utah Supreme Court didn't do that. The answer from counsel was no, I'm actually asking the court to conclude that the statute of limitations was told in between Mr. and Mrs. Robinson did ultimately receive a certificate of compliance. And so it goes on to say what you're asking, but it has nothing to do with Vega. Was that you that was representing? No, Your Honor, that was my counsel. But it does seem that she's certainly not getting arguing about Vega in this application. Well, I think the other point about Vega that was properly preserved in the trial court was the fact that the pre-litigation review requirements that the Utah Supreme Court held were unconstitutional. I think even without retroactively applying Vega, plaintiffs were entitled to the inference that the Yonkers firm would have timely commenced suit, but for those unconstitutional requirements. So even without retroactively applying Vega, I think it's clear that plaintiffs would have timely commenced suit, but for those requirements. All right, counsel, I think your time has expired. We appreciate the arguments. You're excused and the case will be submitted.